UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTMAS HOUSE USA INC. | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | COMPLAINT |
| | : | |
| v. | : | |
| | : | DEMAND FOR JURY TRIAL |
| CHRISTMASLAND EXPERIENCE LLC, | : | |
| MICHAEL MARRA, JOLT MARKETING, | : | |
| BRANDON HAVRILLA, AND REDMAX | : | |
| EVENTS, | : | |
| | : | |
| Defendants. | : | |

Plaintiff Christmas House USA Inc., by and through its attorneys Zimmerman Law Group complains against Defendants ChristmasLand Experience LLC, Michael Marra, Jolt Marketing, Brandon Havrilla and Redmax Events as follows:

**PARTIES**

1. Plaintiff Christmas House USA Inc. ("Plaintiff" or "**Christmas House**") is a New York State company having its office and doing business in this jurisdiction.

2. Defendant ChristmasLand Experience LLC is a New York State company doing business as **ChristmasLand** in this jurisdiction.

3. Defendant Jolt Marketing ("Jolt") is a New York State marketing company doing business in this district.

4. Defendant Michael Marra ("Marra") is a New York State resident and the owner of Jolt Marketing.

5. Defendant Redmax Events ("Redmax") is a New York State event production company doing business in this district.

1

6. Defendant Brandon Havrilla ("Havrilla") is a New York State resident and the principal owner of Redmax. **ChristmasLand**, Jolt, Marra, Redmax and Havrilla will sometimes hereinafter be collectively referred to as "Defendants".

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because this action arises under the laws of the United States, including the Defend Trade Secrets Act and the Lanham Act. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. 1391(b)(1) because all the Defendants reside in this district.

## FACTS

9. Justin Schwartz ("Schwartz") is the Plaintiff's Chief Executive Officer. See Declaration of Justin Schwartz ("Schwartz Decl."), ¶ 1, submitted herewith.

10. Plaintiff **Christmas House** provides a fully immersive Christmas-themed experience for its customers from the first week of November to the second week of January at five different locations:

 a. **Christmas House** at the Smith Haven Mall in Lake Grove, New York;

 b. **Christmas House** at The Westchester mall in White Plains, New York;

 c. **Christmas House** at the Menlo Park Mall in Edison, New Jersey;

 d. **Christmas House** at the Paramus Park Mall in Paramus, New Jersey; and

 e. **Christmas House** at the King of Prussia Mall in King of Prussia, Pennsylvania.

Schwartz Decl., ¶ 2.

11. These five **Christmas House** locations are all owned and operated by Plaintiff. Schwartz Decl., ¶ 3.

12. Plaintiff's **Christmas House** fully immersive Christmas-themed experience provides visitors with a 45+ minute walk through with more than a dozen rooms covering tens of thousands of square feet of space, offering Christmas sights, sounds and smells in different themed rooms including a Snow Room where it is snowing, a Buddy The Elf Room, The North Pole, a Christmas at a tropical beach room, and Santa's Workshop, and also offering a gift shop, and photographs with an animatronic Santa Claus. Schwartz Decl., ¶ 4.

13. The **Christmas House** experience offered at each of Plaintiff's five locations are identical. Schwartz Decl., ¶ 5.

14. Plaintiff first offered its Christmas-themed experience in 2020-2021, during the midst of the COVID-19 pandemic, with a single location doing business as **Christmas House** on Long Island where it attracted 4000 paying customers. Schwartz Decl., ¶ 6.

15. In 2021-2022, Plaintiff again offered its **Christmas House** experience at a single location on Long Island where it attracted 15,000 paying customers. Schwartz Decl., ¶ 7.

16. For the 2022-2023 Christmas season, Plaintiff expanded its operations to provide its Christmas-themed experience at the five locations identified above in Paragraph 10 using its **Christmas House** trademark and trade dress. Schwartz Decl., ¶ 8.

17. The wide-spread, favorable press coverage Plaintiff received allowed it to expand to the five current locations it operates. Schwartz Decl., ¶ 9.

18. Each of Plaintiff's **Christmas House** experiences are staged in vacant mall space that Plaintiff rents on a short-term basis. Schwartz Decl., ¶ 10.

19. In 2021 and 2022, Plaintiff also offered a fully immersive Halloween-themed experience on Long Island using the trademark **Halloween House**. Schwartz Decl., ¶ 11. The **Halloween House** experience was also staged in vacant mall space rented by Plaintiff. *Id*.

20. In October 2021, after meeting Marra at a pop-up restaurant on Long Island that Jolt was promoting, Schwartz retained Jolt to provide marketing services to **Christmas House**, and in particular services directed toward marketing using Facebook and text messaging services. Schwartz Decl., ¶ 12.

21. Jolt's marketing services were different than and did not compete with Plaintiff's **Christmas House** experience. Schwartz Decl., ¶ 13.

22. Jolt provided marketing services to Plaintiff from October 2021 to January 2022, during which Schwartz and Marra often spoke daily, sometimes multiples times a day. Schwartz Decl., ¶ 14.

23. Plaintiff paid Marra and Jolt tens of thousands of dollars. Schwartz Decl., ¶ 15.

24. In the course of working with Jolt in 2021-2022, **Christmas House** disclosed confidential and proprietary trade secret information regarding its business to Marra and Jolt. This trade secret information was disclosed verbally by Schwartz to Marra and in electronic form by e-mails and attachments sent to Jolt. Schwartz Decl., ¶ 16.

25. This trade secret information was disclosed on the explicit condition that it be kept confidential, not be disclosed to any other parties, and not be used to compete or assist any other parties in competing with **Christmas House**, and that if it was so used would constitute irreparable harm entitling Plaintiff to immediate injunctive relief. Marra agreed to such conditions on behalf of himself and Jolt. Schwartz Decl., ¶ 17.

26. Plaintiff's trade secrets include information regarding its: customers; advertising; marketing; sales; revenues; expenses; costs; staffing; training of staff; ticketing; traffic; negotiation of leases; suppliers; profitability; margins; operations; vendors; suppliers; growth projections; social media strategies to acquire customers; use of demographic information to decide upon geographic locations for expansion; competitive advantages compared to other businesses; positioning of the company's brand; creative content and strategies to make the look and feel, i.e. trade dress, of the **Christmas House** experience more distinctive; strategies to make the **Christmas House** trademark more distinctive; capture, analysis and use of customer information; and use of data analytics for certain of the foregoing types of information. Schwartz Decl., ¶ 18.

27. During their interaction from October 2021 to January 2022, Schwartz regularly reminded Marra that the **Christmas House** trade secret information being provided to Jolt was to be kept in confidence and not disclosed to other parties, and not used to compete with Plaintiff, conditions to which Marra confirmed his agreement each time Schwartz mentioned them. Schwartz Decl., ¶ 19.

28. Schwartz and **Christmas House** never believed that Marra and Jolt would betray the trust that **Christmas House** placed in them, by using Plaintiff's trade secrets to start a competing business. In fact, Plaintiff so trusted Marra and Jolt that it provided Jolt with administrative-level, password protected access to Plaintiff's computerized business information. Schwartz Decl., ¶ 20.

29. In April 2022, Schwartz contacted Marra to discuss various **Christmas House**-related business matters including retaining Jolt to provide marketing services to **Christmas House** for the 2022-2023 Christmas season. Schwartz Decl., ¶ 21.

30. After sending a couple of non-committal responsive e-mails that same month, Marra stopped responding to Schwartz's efforts to contact him, and Marra and Jolt ghosted **Christmas House**. Schwartz Decl., ¶ 22.

31. In November 2022, Schwartz discovered that Marra and Havrilla were operating **ChristmasLand**, a competing business providing the identical services to those provided by **Christmas House**, i.e., a fully immersive Christmas-themed experience, having a confusingly similar trade dress, i.e., same look and feel as the **Christmas House** experience, and using a trademark that is likely to be and has been confused with Plaintiff's **Christmas House** trademark. Schwartz Decl., ¶ 23.

32. Advertising for **ChristmasLand** appears on the Redmax website. Schwartz Decl., ¶ 24.

33. The **Christmas Land** website at www.christmaslandny.com indicates that the look and feel, i.e. trade dress, of the Christmas-themed experience Defendants provides is confusingly similar to the Plaintiff's **Christmas House** experience, have the same or similar attractions and themed rooms, and using the same or similar verbiage and layout as used on Plaintiff's **Christmas House** websites at https://christmashouseus.com/ and at https://christmashouselongisland.com/. Schwartz Decl., ¶ 25.

34. Given the parties' business relationship, the marketing services Marra and Jolt provided to **Christmas House** in 2021-2022, Marra and Jolt's knowledge of both Plaintiff's Christmas and Halloween House businesses, Defendants' wrongful actions in misappropriating and infringing Plaintiff's **Christmas House** trademark and trade dress, and in breaching the confidentiality agreements that Marra and Jolt had with **Christmas House** are further evidenced by comparing Marra's admission in a November 28, 2022 *Newsday* article that the

inspiration for **ChristmasLand** were Halloween haunted houses without the scary, i.e., haunted, aspect, which is the identical inspiration for **Christmas House** that Schwartz provided in a November 8, 2020 *Newsday* article two years earlier, and told Marra had inspired him. Schwartz Decl., ¶ 26.

35.     Plaintiff is aware of numerous instances of actual confusion, having been contacted by third parties, including existing customers, inquiring if **ChristmasLand** is associated with or otherwise related to **Christmas House**. Schwartz Decl., ¶ 27.

36.     On November 14 and 16, 2022, Plaintiff's undersigned counsel contacted Havrilla to discuss Defendants' wrongful actions in operating a competing business as alleged in this Complaint. Havrilla responded that he would forward my contact information to Defendants' attorney who would contact me, but I never was contacted by anyone. Declaration of Jean-Marc Zimmerman ("Zimmerman Decl."), ¶¶ 2-3. This action now follows.

## COUNT I
### Trade Secret Misappropriation Under Federal and State Law
### (Against All Defendants)

38.     Plaintiff incorporates by reference all allegations in Paragraphs 1–37 of this Complaint with the same force and effect as if fully set forth herein.

39.     The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 and common law prohibit the unauthorized acquisition, disclosure, use, conversion, and misappropriation of trade secrets and authorize injunctions based on misappropriation of the same.

40.     Plaintiff's trade secrets are described in detail above in Paragraph 26 of this Complaint.

41. Plaintiff derives economic value and competitive advantages in the market from its trade secrets not being generally known to and not being readily ascertainable by competitors and other persons who could obtain economic value from their disclosure or use.

42. Plaintiff has made reasonable and diligent efforts to maintain and protect the confidentiality of its trade secrets including by: (i) limiting disclosure of such information to recipients obligated to maintain its confidentiality, and only so such recipients could perform their jobs or render the services for which they were retained by Plaintiff; (ii) requiring recipients to agree as a condition of disclosure to maintain the confidentiality of such information and to not use or disclose such information to compete against Plaintiff; (iii) and storing such information on secure, password-protected servers.

43. Access to Plaintiff's trade secrets would enable competitors to unfairly compete with Plaintiff by avoiding the substantial efforts and cost invested by Plaintiff to develop them.

44. Plaintiff's trade secrets are related to services offered in interstate commerce.

45. Defendants misappropriated Plaintiff's trade secrets knowing they were acquired by Marra and Jolt in the course of providing services to Plaintiff after they had agreed as a condition of the disclosure of such information that it would be kept in confidence and not used to compete against Plaintiff.

46. Defendants conspired to improperly use Plaintiff's trade secrets in violation of the agreements Marra and Jolt made and in breach of the duty of good faith they owed to Plaintiff.

47. The timing, facts, and other circumstances surrounding Defendants' conduct shows it was intentional, deliberate, willful, malicious, done in bad faith, done at the direction of, aided and abetted by and/or with the knowledge of one another, to enable Defendants to unfairly

compete with and harm Plaintiff, and knowing that it undermined the work Marra and Jolt did for Plaintiff.

48. Defendants continue to use Plaintiff's trade secrets for their benefit to enable them to unlawfully and unfairly compete with Plaintiff.

49. As a direct and proximate result of Defendants' misappropriation, Plaintiff has suffered and will continue to suffer damages and irreparable harm for which it is entitled to temporary, immediate, preliminary, and permanent injunctive relief to prevent further use of its trade secrets. Absent such relief, any damages award would be ineffectual.

## COUNT II
### Trademark Infringement and Unfair Competition under the Lanham Act
### (Against All Defendants)

50. Plaintiff incorporates by reference all allegations in Paragraphs 1–49 of this Complaint with the same force and effect as if fully set forth herein.

51. Plaintiff is the owner of a valid and protectable trademark and trade dress.

52. Defendants infringed upon Plaintiff's trademark and trade dress by adopting and using without permission or authorization a trademark and trade dress in connection with services identical to those provided by Plaintiff, causing a likelihood of confusion, mistake, and deception as to whether Defendants' **ChristmasLand** experience is affiliated with, approved by, in partnership with, sponsored by, or otherwise associated with Plaintiff. Among other things, Defendants' adoption and use of the infringing trademark and trade dress constitute a false designation of origin and/or a false and misleading description of services.

51. Defendants' willfully, maliciously, fraudulently, deliberately, and in bad faith infringed upon Plaintiff's valid and protectable trademark and trade dress.

53. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer damages and irreparable harm for which it is entitled to temporary, immediate, preliminary, and permanent injunctive relief to prevent further infringement of its trademark and trade dress and unfair competition by Defendants. Absent such relief, any damages award would be ineffectual.

## COUNT III
### Breach of Contract (Against All Defendants)

54. Plaintiff incorporates by reference all allegations in Paragraphs 1–53 of this Complaint with the same force and effect as if fully set forth herein.

55. Defendants Marra and Jolt each entered into valid and enforceable agreements with Plaintiff to safeguard the confidentiality of and not disclose or use Plaintiff's trade secrets, and to not use or assist others in using such information to compete with Plaintiff.

56. These agreements were supported by adequate consideration received by Marra and Jolt, including payment for the services they provided to Plaintiff.

57. The restrictive covenants Marra and Jolt agreed to be bound by were sought in good faith and were supported by legitimate business interests Plaintiff has in protecting its valuable and confidential trade secrets.

58. The covenants were reasonably necessary, narrowly tailored, and no greater than necessary to protect Plaintiff's protectable business interests, especially given the value and proprietary nature of the trade secret information provided to Marra and Jolt, and the high-level administrative access they had to such information. The covenants did not restrict Marra or Jolt from providing their marketing services to third parties and were not injurious to the public.

59. Absent these restrictions, Plaintiff could not adequately protect its legitimate interests in its trade secrets and prevent competitors such as Defendants from unfairly competing.

60. Plaintiff has not breached any obligation it owes to Marra and/or Jolt.

61. Defendants Marra and Jolt breached their agreements, and the duty of good faith and fair dealing they owed to Plaintiff by acting in concert, inducing, aiding, and abetting each other and the other Defendants in these breaches by disclosing and using Plaintiff's trade secrets to wrongfully compete with Plaintiff as alleged herein.

62. A presumption of irreparable harm exists where an agent entrusted with highly valuable information breaches a noncompete and/or nondisclosure covenant, as well as when confidential information or trade secrets are at stake. This is because the threat of harm and injury resulting from such a breach is significant, cannot typically be undone, and is often impossible to quantify.

63. As a direct and proximate result of the Defendants' breach, Plaintiff has been damaged and has suffered and will continue to suffer irreparable harm for which it is entitled to temporary, immediate, preliminary, and permanent injunctive relief to prevent further breaches of the covenants Marra and Jolt agreed to. Absent such relief, any damages award would be ineffectual.

## COUNT IV
### Tortious Interference with Business Relationships/Prospective Economic Advantage
### (Against All Defendants)

64. Plaintiff incorporates by reference all allegations in Paragraphs 1–63 of this Complaint with the same force and effect as if fully set forth herein.

65. Plaintiff has enjoyed past success in offering its **Christmas House** experience and has received revenues from doing so.

66. As a result of this success, Plaintiff had valid and existing and/or prospective economic relationships, business relationships and business opportunities.

66. As a result of this success, Plaintiff had a reasonable expectation of deriving economic benefit from continuing to offer its **Christmas House** experience.

67. By virtue of being given access to Plaintiff's trade secrets in conjunction with the marketing services Marra and Jolt provided to Plaintiff, Defendants were aware of Plaintiff's economic relationships, business relationships and business opportunities, and had knowledge of Plaintiff's expectancy of this continued prospective economic benefit.

68. Defendants intentionally, willfully, maliciously, wrongfully, and without privilege or justification interfered with Plaintiff's existing and/or prospective economic relationships, business relationships, and opportunities by virtue of the conduct alleged herein.

69. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer irreparable harm for which it is entitled to temporary, immediate, preliminary, and permanent injunctive relief to prevent further interference with its economic relationships, business relationships, and business opportunities. Absent such relief, any damages award would be ineffectual.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff **Christmas House** demands the following relief against the Defendants, jointly and severally:

**A.** Temporary, immediate, preliminary, and/or permanent injunctive relief:

**1.** Enjoining Defendants and those acting in concert with them from using or disclosing Plaintiff's trade secrets;

**2.** Enjoining Defendants and those acting in concert with them from unfairly competing with Plaintiff by infringing Plaintiff's **Christmas House** trademark and trade dress, including enjoining them from using the **ChristmasLand** trademark and trade dress;

      **3.**     Enjoining Defendants and those acting in concert with them from breaching the non-compete and non-disclosure agreements that Defendants Marra and Jolt agreed to with Plaintiff;

      **4.**     Enjoining Defendants and those acting in concert with them from tortiously interfering with Plaintiff's contractual relationships, business relationships, and business opportunities, including contacting or soliciting any of Plaintiff's existing or prospective customers, on behalf of Defendants' **ChristmasLand** business or any other fully immersive Christmas-themed experience that they operate on Long Island, New York or anywhere else that Plaintiff is currently operating a **Christmas House** experience; and

      **5.**     Enjoining Defendants and those acting in concert with them from continuing to operate their **ChristmasLand** experience or any other fully immersive Christmas-themed experience on Long Island, New York or anywhere else that Plaintiff is currently operating a **Christmas House** experience.

      **B.**     Judgment against the Defendants on each Count of the Complaint;

      **C.**     An award of damages allowed by Federal and/or New York State law;

      **D.**     An award of punitive damages;

      **E.**     An award of pre-judgment interest and post-judgment interest;

      **F**.     An award of attorneys' fees and costs; and

      **G**.     Such further and additional relief as to the Court deems just and appropriate.

| | |
|---|---|
| Dated: December 17, 2022 | By:/s/ *Jean-Marc Zimmerman* |
| | Jean-Marc Zimmerman |
| | Zimmerman Law Group |
| | 153 Central Avenue |
| | P.O. Box 2653 |
| | Westfield, NJ 07090 |
| | P.O. Box 2653 |
| | E: jmz@zimllp.com |
| | T: (908) 768-6408 |
| | |
| | Attorneys for Plaintiff |