UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTMAS HOUSE USA, INC.,

       Plaintiff,       **MEMORANDUM OF DECISION & ORDER**

     -against-

CHRISTMASLAND EXPERIENCE LLC, *et al*.,  22 CV 7691 (GRB)

       Defendants.
------------------------------------------------------------X

**GARY R. BROWN, United States District Judge**:

'Twas the week before Christmas
And at the courthouse,
Some lawyers appeared set
To quarrel and grouse.

More rapid than eagles
Their papers had come:
Declarations, a notice
And memorandum.

It seems that each party
Runs a holiday show,
With Santa, his reindeer,
And fresh mistletoe.

Defendants are alleged
To've made quite a mess,
By stealing trade secrets,
And even trade dress.

"They've stolen our secrets
That we use to function!"
The plaintiff asserted
While seeking injunction.

"It's veritably Grinch-like,"
Plaintiff said with some fire,
"They took our ideas, and
Our holiday supplier."

Defendants respond that
They've acted with care.
"It's all public domain,
That's found everywhere."

To seek an injunction,
One must fast beg redress,
Showing irreparable harm
And likely success.

Plaintiff knew of the problem
Since early November,
Yet waited to file till
17th December.

Plaintiff's secrets remain
Elusive at best,
And there's been little proof
To establish the rest.

So while plaintiff has sounded
The legal alarm,
They have not established
Irreparable harm.

With cases considered,
And procedure applied,
The preliminary injunction
Must now be denied.

Many issues remain,
Yet no one should fear
We'll tackle them all in
The coming New Year.[1]

In this action, plaintiff, Christmas House, USA, Inc., which operates "a fully immersive Christmas-themed experience" at five locations, including, as relevant here, the Smith Haven Mall in Lake Grove, New York, DE 1-1 at 5, raises claims against defendants who operate a

---

[1] These prefatory verses, plainly inspired by Clement Moore's "'Twas the Night Before Christmas" (1823), are in no way intended to undermine the seriousness of the parties' rights and claims. Rather, this nod to the season represents an effort to lighten the mood, and perhaps encourage voluntary resolution of the dispute by the parties.

2

similar business called "ChristmasLand" at the Tanger Outlets in Deer Park, New York. In sum, these parties sell tickets to Christmas-themed facilities, consisting of a series of rooms decorated with holiday themes, and offering participants the chance to wander through "Christmas sights, sounds and smells," take "selfies" in various environments and purchase snacks. DE 1-2 at 2. In their papers, plaintiff recounts that defendants had access to its confidential business information as the result of a marketing arrangement with defendant Jolt Marketing. Based on the allegations, plaintiff purports to raise several claims including trade secrets misappropriation, trademark infringement, breach of contract and tortious interference with business relationships. *See generally* DE 1.

Along with its complaint, filed on December 17, 2022, plaintiff filed an application for a temporary restraining order and preliminary injunction. DE 1. That application revealed that, at the time of filing, plaintiff learned of defendants' operation in early November, well over a month before seeking relief. DE 1-2 at 5.

The Court held an expedited hearing on December 21. Though given the opportunity to do so, neither party offered testimony at the hearing, opting instead to rely on argument. Nevertheless, several relevant, undisputed facts emerged at the hearing. For example, while plaintiff asserts that defendants were subject to non-disclosure or non-compete restrictions emanating from the marketing agreement with Jolt Marketing, plaintiff was unable to produce a written agreement containing such provisions. Instead, defense counsel produced an uncontested written agreement which seems to require plaintiff to "share and give ownership" of its marketing data to defendant Jolt. Plaintiff's counsel represented that its revenue at the Smith Haven Mall location was down 25% from last year while other locations produced consistent revenue year over year, but the Smith Haven facility had been relocated from a location in

3

Westbury since last year.  Finally, plaintiff is largely unable, at this point, to articulate specific trade secrets (including vendors), trademarks or trade dress misappropriated by defendants, or provide evidence of loss of goodwill from the alleged issues.

Following the hearing, the Court made oral rulings, available in a transcript of those proceedings, which are incorporated fully herein by reference.  In short, the Court determined that plaintiff failed, at this preliminary juncture, to establish irreparable harm, a likelihood of success on the merits or that the balance of hardships weighed in its favor.  Furthermore, plaintiff's application was affected by unexplained delay in filing.  While the delay here of a little more than a month was relatively short, *compare Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144–45 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction"), because of the seasonal nature of these enterprises, the delay proved critical:  the proposed preliminary injunction would have effectively shut down defendants' operation days before Christmas, which the parties agreed represents an important period for the subject attractions.

Thus, the application for a preliminary injunction is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
       December 22, 2022

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge